706 So.2d 1037 (1998)
TRCM, LLC, Plaintiff-Respondent,
v.
The TWILIGHT PARTNERSHIP, et al., Defendants-Applicants.
No. 30331-CW.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1998.
Writs Denied March 13, 1998.
*1038 McLeod Verlander by David E. Verlander and Pamela G. Nathan, Monroe, for Defendants-Applicants Twilight Partnership, Dr. Frank X. Cline, Jr., Dr. Myron B. Bailey, Individually and in His Capacity As Trustee of the Myron Bailey, III Minority Trust, Country Lake, Inc., Dr. Rifat M. Nawas, Dr. R. Louis Gavioli and Dr. Sidney L. Bailey.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre by Edward D. Wegmann, New Orleans, for Defendants-Applicants Dr. Douglas C. Brown and Achnacary, Inc.
Hayden, Moore & Ryan by G. Scott Moore, Monroe, for Defendant-Applicant Dr. Rifat M. Nawas.
Ward, Nelson & Pelleteri by Joseph R. Ward, Jr., Lisa A. Condrey, Lynn H. Frank and James E. Brouillette, New Orleans, for Plaintiff-Respondent.
Before MARVIN, C.J., and HIGHTOWER and STEWART, JJ.
MARVIN, Chief Judge.
In this action by TRCM alleging vices of consent to nullify a contract containing an arbitration provision, we initially declined to exercise supervisory review of the trial court's ruling denying the motions of the applicant-defendants to compel arbitration. We found no palpable error in the trial court's reliance on George Engine Co., Inc. v. Southern Shipbuilding Corp., 350 So.2d 881 (La.1977).[1]
The supreme court thereafter granted a supervisory writ on December 12, 1997 and remanded this matter to us. We ordered additional briefing and argument and now render our opinion on the merits as directed by the supreme court.
Distinguishing the arbitration provision in this contract from the one in George Engine, supra, we reverse the ruling of the trial court, rendering and remanding with directions to enforce the arbitration provision.

DISCUSSION
The issue is jurisdictional: Whether the substantive contract containing the arbitration provision that any controversy arising out of the agreement or the ... validity thereof is to be resolved by the court or by an arbitration panel. One or more vices of consent in the inducement of the contract, if proved to the satisfaction of the proper forum [either the court or the arbitration panel], of course, would nullify the contract.
We find no gross difference in the language of the federal and Louisiana arbitration laws discussed hereafter, but note that the federal courts generally decline to enforce arbitration only in those instances *1039 where it is alleged and proved that a vice of consent in the inducement of the specific agreement to arbitrate clause itself vitiates the clause. See Prima Paint Corp. v. Flood and Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270(1967). See discussion and authorities cited in Freeman, supra, discussed and distinguished in Sun Drilling, supra. See discussion and authorities cited in Stone v. Stone, 292 So.2d 686 (La.1974). Louisiana courts are not as consistent. Compare Louisiana cases cited in the first paragraph. Also compare Bodman, Murrell & Webb v. Acacia Foundation of L.S.U., Inc., 246 So.2d 323 (La.App. 1st Cir.1971), writ denied, 258 La. 766, 247 So.2d 864 (1971).

Case Posture
To the action of TRCM alleging vices of consent [misrepresentations] in the inducement of its contract with the defendant Twilight partnership, the partnership and its members, also defendants, filed an exception of prematurity, a motion to stay, a motion to compel arbitration and a motion for sanctions. These pleadings sought to have TRCM's petition dismissed, or alternatively stayed, and TRCM ordered to submit the dispute to arbitration. Twilight relies on paragraph 19(I) of the contract:
Any controversy or claim arising out of or relating to this agreement or the breach or validity thereof shall be settled by arbitration in Monroe, Louisiana by a panel of three arbitrators in accordance with the rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof, and the parties consent to the jurisdiction of the Louisiana courts for this purpose.

State and Federal Law
We italicize the identical statutory language:
After defining interstate commerce in 9 U.S.C. § 1 as commerce among the several states, the federal law in 9 U.S.C. § 2 states that a written provision in a contract:
... evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

La. R.S. 9:4201 states:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Other Louisiana provisions relating to actions to enforce an arbitration provision in a contract require that the
... court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration. § 4202.
Section 4203 then provides the procedure for judicially enforcing an arbitration provision and states in part:
The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure or refusal to perform is an issue, the court shall proceed summarily to the trial thereof.
Both state and federal jurisprudence reflect a strong legislative policy favoring arbitration. *1040 Any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. Russellville Steel Co., Inc. v. A & R Excavating, Inc., 624 So.2d 11 (La.App. 5th Cir.1993); cases cited supra.
The litigants effectively concede that the business sold to plaintiffs by defendants [a physical rehabilitation clinic in Monroe] sees patients, processes insurance claims, and procures some of its supplies and equipment from adjoining states. The federal law preempts state laws which undercut enforcement of arbitration in contracts involving interstate commerce. Twilight also asserts that federal arbitration law is applicable to any contract affecting interstate commerce unless the arbitration clause itself was fraudulently obtained or included in the contract.
While we find no gross difference in federal and Louisiana law, our agreement that federal law applies requires us to adopt the interpretation of those laws by the nation's highest court. See Prima Paint Corp. v. Flood and Conklin Mfg. Co., supra. Compare Louisiana cases, George Engine, supra, and its progeny cases cited supra.
Contrary to the arbitration provision in Wied, supra, and in this contract, the George Engine arbitration clause did not expressly require the litigants to arbitrate the issue, a vitiating vice of consent striking at the validity of the George Engine contract. George Engine contracted with Southern to construct tug boats for use in the offshore oil business. When Southern did not timely complete the tugs, George and Southern signed an amended agreement that required them to arbitrate any controversy or claim arising out of or relating to the contracts or any breach thereof. George Engine brought the action, contending it was induced to sign the amendment because Southern falsely misrepresented and assured George Engine no impediments to the delivery dates existed. The issue was whether a court had jurisdiction to declare a contract containing an arbitration provision, void ab initio because of the alleged misrepresentations. The George Engine court said:
A study of the agreement of September 19, 1974 and the incorporated construction contracts together with the quoted arbitration clause evinces no intent of the parties to specifically arbitrate the issue of error in the inducement of the agreement ... To the contrary, a stipulation in the agreement "that when such matters are submitted to arbitration" refers to cause and extent of delays in delivery of the vessels and the assessment of liquidated damages, matters properly subject to arbitration. It would be an absurdity to compel arbitration of the conditions in a contract which does not exist in its entirety in legal contemplation.

This Court's jurisdiction cannot be displaced whenever a contract contains an arbitration clause. The arbitration law and arbitration clauses in contracts do not vest in arbitrators the historic jurisdiction of the courts to determine fraud or duress in the inception of a contract. It may be said that courts are far better qualified to decide issues of this kind. These are not questions of "construction law", particularly applicable to the building of boats, nor is a question of fact involved that arbitrators are peculiarly well qualified to consider.
... By its very terms Section 4201 presupposes the existence of a valid contract as a basis for invoking arbitration.

George Engine, supra, at p. 884.
Emphasis supplied, citations omitted.
Justice Summers, for the majority, suggested that arbitrators who are designated to resolve factual controversies arising out of valid contracts need not be lawyers and may be wholly unqualified to resolve legal issues. The majority construed Louisiana law as directing that a court resolve the issue of the validity of the contract.
Justice Tate, dissenting, contended that the majority opinion destroyed the purpose of arbitration agreements by permitting a party to delay arbitration indefinitely by seeking to rescind the substantive contract:
By La. R.S. 9:4201, the legislature provided that "A provision in any written contract... to settle by arbitration ... or an agreement ... to submit to arbitration ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or *1041 in equity for the revocation of any contract."
The statutory language may reasonably be interpreted to mean, as a substantial number of courts (including the United States Supreme Court) have, that the arbitration agreement is irrevocable and enforceable unless the arbitration agreement itself (not a parent contract) may be revoked upon such grounds as other contracts may be revoked....
Where the parties freely consent to arbitration of future disputes arising out of or relating to a contract, and their consent to the arbitration agreement itself is not based upon any fraud or misrepresentation as to it [arbitration], the very purpose of their full consent to the arbitration agreement is to avoid the expense, delays, and uncertainties of litigation regarding the validity of either the contractual undertaking itself or the contractual performance.
Here, the parties amended the initial contracts, after disputes as to them had arisen, and then agreed in writing to submit to arbitration "any controversy or claim arising out of or related to the construction contracts, as amended by this Agreement." No claim is made that both parties did not freely intend to arbitrate all future disputes relating to the contract, nor that any misrepresentation induced either party to enter into such arbitration agreement (which is separable from the parent contract itself) and specifically reject litigation as the means of resolving future disputes.

George Engine at pp. 886-887. Citations omitted.
Often quoting all or part of the italicized portion of the George Engine majority opinion, some Louisiana courts have broadly stated that the issue of whether an agreement is void ab initio is not subject to arbitration, notwithstanding the presence of an arbitration clause in the contract. See, e.g., Ackel, supra; Sun Drilling Products Corp., supra.
This court's opinion in Wied, supra, assumed, but did not decide, that George Engine, supra, permitted litigants in other circumstances to successfully defend against an exception of prematurity by showing the substantive contract is null. Wied involved an employment agreement containing an arbitration clause and a noncompetition provision. TRCM, like Twilight in this case, filed an exception of prematurity to Wied's suit and demanded arbitration. Wied contended the entire contract was void because of an illegal noncompetition clause. The Wied contract had severability provisions which permitted the contract to remain in effect even if a part [the noncompetition provision], was declared invalid. Enforcing arbitration, Wied distinguished George Engine, supra, finding the language in the George Engine agreement did not expressly encompass, as the contract here does, arbitration of the validity of the inducement of the contract. Compare Freeman etc. supra, citing Prima Paint Corp. v. Flood and Conklin Mfg. Co., supra, with Sun Drilling, supra and Wied, supra.

CONCLUSION
The respective reasoning or rationale between the two approaches is not reconcilable. On the one hand, if the agreement to arbitrate must be considered as a separate contract from the substantive contract, the logically following inquiry is whether a party whose contract is induced by vice[s] of consent would have agreed to arbitrate the validity of his consent absent the vice.
On the other hand, to allow a judicial resolution with inherent delays and appeals of all disputes as to the validity of the contract in those instances where a contracting party alleges the substantive contract containing the arbitration clause is vitiated by a vice unrelated to the arbitration provision in the contract, obviously defeats federal and state policy favoring contractual extrajudicial and expeditious arbitration to avoid prolonging resolution of contractual disputes.
This contract, unlike George Engine, specifically requires that the validity of the contract be settled by arbitration. The misrepresentations alleged here do not strike at the agreement to arbitrate in the amended contract. Interestingly, TRCM the defendant in Wied, supra, and plaintiff-respondent here, succeeded in enforcing an arbitration provision against Wied. The Wied contract required *1042 that the jurisdiction of the arbitrator shall be decided by the arbitrator in the first instance. Having affirmed TRCM's position in Wied to enforce arbitration, the same position urged by the Twilight defendant-applicants here, we shall enforce against TRCM its agreement to arbitrate here the validity of the contract. Freeman, supra; Wied, supra. The supreme court may resolve the apparent conflict that may exist among the Louisiana circuits.

DECREE
Under the circumstances above summarized, we reverse and render, hereby ordering the trial court to grant, and enforce, if necessary, applicants' motions according to the Louisiana Arbitration Laws, and to compel arbitration, and to consider and resolve in due course, after a hearing, applicants' motion for sanctions. Costs below and here are assessed to TRCM.
Reversed, rendered with directions, and remanded.
NOTES
[1] Compare, however, Ackel v. Ackel, 97-70 (La. App. 5th Cir. 5/28/97), 696 So.2d 140; Wied v. TRCM, LLC, 30,106 (La.App.2d Cir. 7/24/97), 698 So.2d 685; Freeman v. Minolta Business Systems, Inc., 29,655 (La.App.2d Cir. 9/24/97), 699 So.2d 1182; Sun Drilling Products Corp. v. Rayborn, 97-2112 (La.App. 4th Cir. 12/3/97), 703 So.2d 818.